**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

ALONZO ROSS,

                              Plaintiff,

            - v -                                Civ. No. 9:14-CV-1321
                                                                     (GTS/DJS)

CARL J. KOENIGSMANN, *et al.*,

                              Defendants.
_____

**APPEARANCES:**                                        **OF COUNSEL:**

ALONZO ROSS
Plaintiff, *Pro Se*
12-B-3789
Attica Correctional Facility
Box 149
Attica, New York 14011

HON. ERIC T. SCHNEIDERMAN               CHRISTOPHER J. HUMMEL, ESQ.
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

      This matter returns to the Court on Defendants Ventaka Mannava and Amy Ferguson's second Motion for Summary Judgment, filed pursuant to FED. R. CIV. P. 56. Dkt. No. 90, Defs.' Mot. Summ. J. Defendants previously filed a Motion for Summary Judgment, and in a Report-Recommendation and Order, dated September 8, 2016 ("September Report-Recommendation"), this Court recommended that that Motion be granted in all respects, except as to Plaintiff's Eighth Amendment medical indifference claim against Defendants Mannava and Ferguson. Dkt. No. 79,

Rep.-Rec. & Order, dated Sept. 8, 2016. That recommendation was accepted and adopted by the Honorable Glenn T. Suddaby, Chief United States District Judge, in a Decision and Order, dated September 28, 2016. Dkt. No. 84. Chief Judge Suddaby, however, granted Defendants leave to file a second Motion for Summary Judgment as to Plaintiff's surviving claim. *Id.* at p. 10. Defendants Mannava and Ferguson have now filed a second Motion, which seeks to dismiss Plaintiff's remaining claim. Defs.' Mot. Summ. J. Plaintiff opposes the Motion. Dkt. Nos. 94, Pl.'s Resp, & 101, Pl.'s Suppl. Resp. For the reasons that follow, the Court recommends that Defendants' Motion be **granted**.

## I. LEGAL STANDARD

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations

of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. DISCUSSION

### A. Eighth Amendment

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs."

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). A court must consider two inquiries in determining whether a deprivation of care is sufficiently serious. *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). First, the court must determine "whether the prisoner was actually deprived of adequate medical care." *Id.* Medical care is adequate where the care provided is a "reasonable" response to the inmate's medical condition. *Id.* The second inquiry is "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280. In cases where there is a failure to provide any treatment, the court examines whether the inmate's medical condition is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (quoting

*McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). In cases where medical treatment is given, but is inadequate, "the seriousness inquiry is narrower." *Salahuddin v. Goord*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quoting *Smith v. Carpenter*, 316 F.3d at 185).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. at 835). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

### B. Relevant Background

The Court herein summarizes the factual and procedural background relevant to Plaintiff's remaining claim. For further background on this action, the Court makes reference to its summary

of the material facts in its September Report-Recommendation. Sept. Rep.-Rec. at pp. 2-10.

Plaintiff was transferred to Mid-State Correctional Facility ("Mid-State") on April 5, 2013. Dkt. No. 90-1, Defs.' Rule 7.1 Statement of Material Facts ("Defs.' SMF") at ¶ 13. At that time, Plaintiff was suffering from a number of chronic medical conditions, including neuropathy, lower-back pain, and sciatic nerve pain. *Id.* Plaintiff was receiving Neurontin to treat his pain symptoms resulting from these conditions, and at his admission health screening, Defendant Nurse Practitioner ("NP") Ferguson continued Plaintiff's Neurontin prescription. *Id.* at ¶¶ 13-14.

Plaintiff received this prescription until October 21, 2013, when NP Ferguson discontinued the prescription after being informed by another nurse that Plaintiff was misusing the medication by "cheeking" it. *Id.* at ¶ 19. NP Ferguson was informed that Plaintiff had placed the medication in his mouth, quickly drank the cup of water, opened his mouth, and then walked away from his cell window without permitting a full inspection by the nurse to determine that he had properly taken the medication. Dkt. No. 90-3, Decl. of Amy Ferguson, dated Sept. 21, 2016 ("2d Ferguson Decl."), at ¶ 13. When Plaintiff was called back to the cell window, he initially refused, but eventually did open his mouth and revealed that he had secreted the medication under his tongue. *Id.* The nurse recorded this incident in Plaintiff's medical records. Dkt. No. 32-4, Decl. of Amy Ferguson, dated Jan. 27, 2016, Ex. I. On October 28, 2013, Defendant Dr. Mannava affirmed the decision to discontinue Plaintiff's Neurontin prescription after discussing the incident with the nurse. Defs.' SMF at ¶ 6.

According to NP Ferguson, she discontinued Plaintiff's Neurontin prescription for several reasons: (1) a patient's misuse of a medication poses a health risk to the patient; (2) a patient's misuse of a medication poses a risk to the security of the facility and the health of other inmates if

the patient were to attempt to sell the medication to other inmates; (3) a patient's misuse of a medication indicates that the patient may not actually need the medication; (4) Ferguson was aware that Plaintiff had a history of cheeking medications; and (5) Plaintiff had been prescribed other medications to treat his chronic pain. *Id.* at ¶ 32.

Plaintiff, on the other hand, claims that the report that he attempted to cheek his medication was "fabricated." Dkt. No. 94, Pl.'s Rule 7.1 Counter-Statement of Material Facts ("Pl.'s Counter-SMF") at ¶ 19. Plaintiff further claims that his medication was given to him crushed and dissolved in a cup of water, and it was therefore impossible for him to cheek the medication. *Id.* at ¶¶ 21 & 23.

In its September Report-Recommendation, this Court found, at the objective prong of the Eighth Amendment claim, that there was a genuine issue of material fact as to whether the discontinuation of Plaintiff's Neurontin prescription was a "sufficiently serious" deprivation of adequate care. Sept. Rep-Rec. at p. 25. In this analysis, the Court considered Plaintiff's testimony that he suffered withdrawals, worsening pain, and difficulty walking after his prescription was discontinued. *Id.*

The Court also found a disputed issue of material fact at the subjective prong. *Id.* at p. 26. Specifically, the Court noted that Plaintiff's claim that his Neurontin was crushed and dissolved in water appeared to be supported by his medical records, thus lending support to Plaintiff's contention that it would have been impossible for him to have cheeked his Neurontin. *Id.* Defendants did not address or explain whether Plaintiff's Neurontin was in fact dissolved in water. *Id.* Thus, the Court found that there was "a disputed issue of material fact as to whether Defendants discontinued Plaintiff's Neurontin prescription pursuant to a medical judgment or based on other, non-medical

reasons." *Id.*

## C. Analysis

In the present Motion, Defendants seek to clarify Plaintiff's medical records. Dkt. No. 90-4, Defs.' Mem. of Law at pp. 2-3. Defendants argue that Plaintiff's medical records in fact contradict his assertions and establish that they did not act with deliberate indifference in discontinuing his Neurontin prescription.[1] *Id.* at pp. 10-12.

Plaintiff's medical records indicating his Neurontin prescription, dated May 9, 2013 and June 27, 2013, contain the notation "crush." *See* Ferguson Decl., Exs. C & E. As Defendant NP Ferguson explains, "crush" indicates that the nursing staff is to provide the medication in a crushed or powdered form. 2d Ferguson Decl. at ¶ 4. The inmate receives the crushed medication and a cup of water, and then is to take the medication with the water, and allow the nurse to conduct a visual inspection to ensure that the medication has been properly taken. *Id.* Medication is delivered in this manner in order that staff may easily detect when an inmate is attempting to cheek the medication. *Id.* at ¶ 12. Alternatively, a prescription may be notated as "crushed and dissolved" or "liquefied." *Id.* at ¶ 5. A medication administered in this manner is crushed and dissolved in a cup of water before being given to the inmate. *Id.* If a medication is notated "crushed," however, it may not be delivered "crushed and dissolved." *Id.* at ¶ 8.

In opposition, Plaintiff argues even if his medical records only contain the notation "crush," his Neurontin prescription was always delivered "crushed and dissolved" in water. Pl.'s Counter-SMF at ¶ 21. Plaintiff again argues that his medical records were fabricated in order to discontinue

---

[1] Defendants argue, at the subjective prong, that they did not act with deliberate indifference, but do not address whether the discontinuation of Plaintiff's Neurontin constituted a sufficiently serious deprivation of care. The Court therefore will not re-visit its analysis in that regard. Sept. Rep.-Rec. at p. 25.

his Neurontin prescription. Dkt. No. 94-1, Pl.'s Mem. of Law at p. 6.

The supplemented record is sufficient to establish that Defendants NP Ferguson and Dr. Mannava did not act with deliberate indifference in discontinuing Plaintiff's Neurontin prescription. The decision to discontinue an inmate's medication where there is evidence that the inmate is misusing the medication does not constitute deliberate indifference. *See Sanchez v. Docs Med. Dep't*, 2016 WL 5956072, at *4 (W.D.N.Y. Aug. 16, 2016); *Jones v. Tompkins*, 2016 WL 4211610, at *7 (W.D.N.Y. Aug. 10, 2016); *Cole v. Pang Lay Kooi*, 2013 WL 4026842, at *5 (N.D.N.Y. Aug. 6, 2013); *Josey v. Rock*, 2013 WL 1500435, at *9 (N.D.N.Y. Mar. 19, 2013); *see also Wright v. Genovese*, 694 F. Supp. 2d 137, 160 (N.D.N.Y. 2010) ("Differences in opinions between a doctor and an inmate patient as to the appropriate pain medication clearly do not support a claim that the doctor was deliberately indifferent to the inmate's 'serious' medical needs."). Here, Plaintiff's medical records, supported by NP Ferguson's Second Declaration, establish that Plaintiff's Neurontin prescription was discontinued after he was caught cheeking it. Plaintiff's conclusory assertion that his records were "fabricated" is insufficient to create an issue of material fact. *See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 85 (2d Cir. 2005) ("The law is 'well-established that conclusory statements, conjecture, or speculation' are inadequate to defeat a motion for summary judgment.").[2]

---

[2] Plaintiff also argues that Defendants' Motion is unsupported insofar as they do not offer a sworn affidavit of the unidentified nurse who allegedly caught Plaintiff cheeking his Neurontin. *See* Pl.'s Mem. of Law at pp. 6, 11, & 14. However, contemporaneous medical records are properly considered in ruling on a summary judgment motion. *See, e.g.*, *Sanchez v. Docs Med. Dep't*, 2016 WL 5956072, at *5. Medical records, although hearsay, "can be admissible under Federal Rule of Evidence 803(6), provided that they are prepared in the regular course of business, near the time of occurrence, by a person with knowledge and are properly authenticated." *Hodges v. Keane*, 886 F. Supp. 352, 356 (S.D.N.Y. 1995). The medical record Plaintiff challenges is introduced as an Exhibit to the Declaration of NP Ferguson, who has personal knowledge of the record, as she prepared it. Ferguson Decl. at ¶ 19. To the extent Plaintiff is challenging the authenticity of this particular record, that objection is not properly raised since Plaintiff himself relied upon his ambulatory health records in opposing Defendants' first Motion for Summary Judgment, and in support of his
(continued...)

Accordingly, the Court recommends that Defendants' Motion be **granted**.[3]

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 90) be **GRANTED** and this action **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[4] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: August 16, 2017
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge

---

[2](...continued)
Cross-Motion for Summary Judgment, without objecting to their authenticity. *See generally* Dkt. No. 64-3; *see also Parks v. Blanchette*, 144 F. Supp. 3d 282, 293 (D. Conn. 2015) ("Mr. Parks argues that, without any foundation for the exhibits' admissibility, the Court cannot consider Defendants' medical records. The Court disagrees. Even if the exhibits are not properly authenticated under Rule 803(6)(D), Mr. Parks relied on Defendants' medical records in opposing Defendants' summary judgment motion without objecting to their authenticity.").

[3] Because the Court recommends that summary judgment be granted on the merits of Plaintiff's remaining claims, it does not reach Defendants' alternative argument that they are entitled to qualified immunity.

[4] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).